UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY J. DEEBS,
WILLIAM DRAKE,

                              Plaintiffs,

                                                                     <u>DECISION AND ORDER</u>

                                                                        06-CV-6176L

                        v.

ALSTOM TRANSPORTATION, INC.,

                              Defendant.
_____

       Plaintiffs William Drake ("Drake") and Timothy Deebs ("Deebs") bring this action against their former employer, ALSTOM Transportation, Inc. ("ALSTOM"), alleging age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA"). Deebs also asserts retaliation claims pursuant to the ADEA and the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL"). Discovery is now completed and ALSTOM moves for summary judgment dismissing the plaintiffs' claims (Dkt. #28). For the reasons that follow, ALSTOM's motion for summary judgment is granted, and the Amended Complaint is dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      **ALSTOM's System for Evaluating Employee Performance**

       Since 2002, ALSTOM has used a standardized grading system to evaluate salaried employees, which grades various performance and behavioral categories from 0 (lowest) to 4

(highest). ALSTOM supervisors are required to rate employees along a bell curve, with the majority of employees receiving average ratings of 2, indicating that they are "meeting the job requirements." Employees receiving a "1" on their performance review are placed on a performance improvement plan ("PIP") to assure that they receive increased individual attention from their supervisors, and can work toward clearly articulated performance goals. In order to remain employed, however, an employee on a PIP is required to satisfactorily complete his performance objectives.

**B.    Drake's Employment with ALSTOM**

ALSTOM hired Drake on April 5, 1998. Throughout most of his tenure at ALSTOM, which he concluded in the position of product-line supervisor in ALSTOM's Manufacturing Division, Drake was supervised by Patrick Aini ("Aini"). As a product-line supervisor, Drake was responsible to supervise the hourly workers assigned to ALSTOM's New Jersey Transit project, checking accuracy of work, documenting attendance, instructing employees, and interviewing, training and hiring new employees.

Throughout his employment at ALSTOM, Drake's performance was generally rated as "2," or average. However, beginning in 2001 and with increasing frequency thereafter, Aini noted that Drake's interpersonal skills, and specifically his hot temper, were deficient and unprofessional and needed improvement. After receiving a "1" in the category of "behavioral/interpersonal skills" on his 2005 performance review, which rated his performance during the 2004 calendar year, Drake was placed on a PIP. According to the PIP, Drake needed to immediately "maintain control of emtions [sic] when dealing with any employee."

In late March 2005, ALSTOM determined that it was necessary to take immediate action to cut costs, and began to consolidate several departments in order to eliminate duplication of effort. Because a number of projects were scheduled for completion in mid-2005, ALSTOM senior management and the Human Resources Department determined that one or more production line supervisor positions in the Manufacturing Department could be eliminated.

In May 2005, Louis Tartaglia ("Tartaglia"), ALSTOM's Vice President of Manufacturing, contacted Aini and inquired whether any production line supervisors had "performance issues." Aini stated that Drake did, as Drake was the only production line supervisor who was on a PIP. Shortly thereafter, Tartaglia informed Drake that, due to the reduction in force, his position was being eliminated as duplicative. At the time of his termination, Drake was fifty-seven years of age.

C.     **Deebs' Employment with ALSTOM**

Deebs applied for a technician position with ALSTOM on April 17, 2002. As part of the application process for the position, Deebs was required to take an electrical skills test administered by Gerald VanDyke ("VanDyke"), ALSTOM's Test Manager. Deebs failed the test, scoring 55% which failed to meet the 65% score necessary. Nonetheless, VanDyke needed urgent assistance on the night shift, and hired Deebs for that shift on May 29, 2002, with the caveat that Deebs would have to retake and pass the electrical skills test in order to remain employed by ALSTOM. A fellow applicant, Joseph Capute ("Capute") who was 23 years old and also failed the electrical skills test, was also hired on the night shift, with the same ultimatum.

Deebs received his first Performance Review in March 2003, which evaluated him as a "1" for both "performance objectives completion" and "behavioral/interpersonal skills," and further

noted that Deebs' electrical skills were "weak" and needed to be retested. Deebs was placed on a PIP which required him to: (1) improve communication with coworkers; (2) complete all tasks on time; and (3) abstain from idling in the workplace, smoking cigarettes, thereby hindering other employees' progress. Deebs was also required to retake, and pass, an electrical skills test by July 31, 2003. However, the retesting did not take place, due to Deebs being temporarily furloughed due to lack of work. After his return, VanDyke forgot to retest him.

In his 2005 Performance Review, Deebs was again rated as a "1." VanDyke noted that Deebs' problem-solving and electrical skills still needed improvement, and that Deebs "wasn't growing as a technician." Deebs was again placed on a PIP which required that he pass an electrical skills test, and warned that if he did not pass the test, he risked termination.

Deebs retook the electrical skills test on July 6, 2005. This time, he failed with a score of 38%. As a result, Deebs' employment was terminated on July 27, 2005. It is undisputed that at the time of his discharge, Deebs was over the age of forty. Capute, the younger applicant who had been hired along with Deebs, also retook the same test, passed, and remained employed by ALSTOM.

Several months later, Deebs was hired by Quality Inspection Services, Inc. ("QISI"), a temporary staffing agency, and was contracted to ALSTOM as a temporary warehouse employee in the Quality Systems Department. After ALSTOM's Human Resources Department became aware of Deebs' temporary position, it notified the Quality Systems Department on March 10, 2006 that Deebs had been previously terminated by ALSTOM for performance reasons, and should not have been employed as a temporary worker. Human Resources instructed the Quality Systems Department to inform QISI that Deebs' assignment had ended, which was immediately done.

**D.      Procedural Posture**

Drake filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 21, 2005, alleging age-based discriminatory discharge, and received a Right-to-Sue letter on December 29, 2005. Deebs followed suit on August 10, 2005, alleging discriminatory discharge on the basis of age. He received a Right-to-Sue letter on January 31, 2006. On March 28, 2006, plaintiffs filed the instant action, alleging age-based discrimination with respect to their terminations.

After Deebs was terminated from his second, temporary position with ALSTOM, he filed a second charge of discrimination with the EEOC, and received a Right-to-Sue letter on June 28, 2006. On October 20, 2006, plaintiffs filed an Amended Complaint which added unlawful retaliation claims on behalf of Deebs.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to...

other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Plaintiffs' claims of employment discrimination are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, each plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). In the age discrimination context, such circumstances include those where a plaintiff was "fired in favor of the retention of younger persons or was fired and replaced by younger persons." *Pirone v. Home Ins. Co.*, 559 F. Supp. 306, 309-310 (S.D.N.Y.), *aff'd*, 742 F.2d 1430 (2d Cir. 1983). Once each plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to the plaintiffs, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting plaintiffs the liberal interpretation and favorable inferences due to them as nonmovants, I find that both have nonetheless failed to establish a *prima facie* case of discrimination, and/or to rebut ALSTOM's legitimate, nondiscriminatory reason for terminating their employment.

**II.     Drake's Discriminatory Discharge Claim**

While conceding the fact that Drake was the only production line supervisor on a PIP at the time ALSTOM initiated a reduction in force, Drake asserts that the true motivation behind ALSTOM's decision to terminate his employment was discriminatory.

The basis for Drake's claim is the undisputed fact that the production line supervisors who were retained were younger than he.  He also alleges that he was "replaced" by another, younger production line supervisor, in that his job functions were reassigned to Aini, who was younger than Drake, who in turn delegated some of those responsibilities to another, younger employee.

The fact that some younger production line supervisors were retained in preference to Drake is generally sufficient to make out a *prima facie* case of age-based discrimination.  *See Tutko v. James River Paper Co., Inc.*, 1999 U.S. App. LEXIS 28344 at *2 (2d Cir. 1999).  As such, the burden shifts to ALSTOM to articulate a legitimate nondiscriminatory reason for discharging Drake.

ALSTOM has met this burden.  "A reduction in force is a legitimate nondiscriminatory reason for termination."  *Id*. at *3, citing Parcinski v. Outlet Co.*, 673 F.2d 34, 36-37 (2d Cir. 1992). "The [ADEA] does not forbid essential corporate belt-tightening having no discriminatory motivation," *id.*, and courts and juries do not operate as "super-personnel department[s]" to question a company's staffing decisions.  *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997).  As such, the burden returns to Drake to show that his selection for the reduction in force was pretextual.

Initially, Drake points to the fact that after he was terminated, his duties were reassigned to Aini, who discovered that he was unable to handle them alone and temporarily required assistance from another, younger employee until the New Jersey Transit project was finished.  However,

ALSTOM's reassigment of Drake's duties to other, younger employees does not dictate a finding that the other employees were hired into Drake's line supervisor position, or that the position was effectively reinstated at any relevant time following Drake's discharge. *See e.g.*, *Suttell v. Mfgs. Hanover Trust Co.*, 793 F. Supp. 70, 73 (S.D.N.Y. 1992) (reassignment of a plaintiff's duties to younger employees upon a reduction in force does not equal "replacement" of the plaintiff with a younger employee for purposes of an ADEA discrimination claim).

I also note that nearly half of the production line supervisors who ALSTOM retained in Drake's department, while younger than Drake, were nonetheless over the age of forty. Following the reduction in force, in the positions where a reduction was made, the majority of ALSTOM's remaining workforce was over the age of forty. *See generally Johnson v. New York City Board of Educ.*, 2000 U.S. Dist. LEXIS 17410 at *26 (E.D.N.Y. 2000) (noting in a race-based discrimination case that where the protected class is well-represented in the employer's workforce, the "demographics . . . [do] not imply discrimination").

Drake's attempt to demonstrate pretext is grounded primarily upon his own speculation, much of which is contradicted by the record, and inadmissible hearsay. *See Tutko*, 1999 U.S. App. LEXIS 28455 at *5 (plaintiff cannot defeat summary judgment by relying upon "unsupported assertions," but must produce "sufficient evidence to support a rational finding" in its favor). For example, Drake asserts that the reduction in force was a sham, and that ALSTOM was hiring additional, younger production line supervisors during the time of his termination. However, Drake offers no evidence to support this contention, and ALSTOM's records indicate a reduction in force in multiple departments involving many positions.

Drake's claim that ALSTOM continued to hire younger workers into *other* positions after his discharge is also unavailing: a plaintiff claiming discriminatory discharge "must show more than the fact that Defendant has hired employees since Plaintiff was discharged. Plaintiff must show that *[his]* position was replaced by a [person outside of the protected class]." *Campbell v. Home Depot USA, Inc.*, 2006 U.S. Dist. LEXIS 14958 at *24 (S.D.N.Y. 2006) (emphasis in original).  Finally, Drake's assertion that he had not experienced performance problems, or been counseled for having a quick temper, prior to his final performance review, is also unsupported, and is contradicted by his prior written Performance Reviews, which contain scattered references to his need to "stay more open minded" and find "different methods of expressing his frustrations to his employees and fellow supervisors."

Accordingly, I find that Drake has failed to rebut ALSTOM's legitimate, nondiscriminatory reasons for his termination – Drake's ongoing performance difficulties, and the fact that he was the only production line supervisor in his department who was on a PIP – and his discriminatory discharge claim must be dismissed.  *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (in order to resist summary judgment, plaintiff "must demonstrate . . . that the reduction-in-force and the allegation of poor performance are actually a pretext and that the real reason for his discharge was his age").

### III.     Deebs' Discriminatory Discharge and Retaliation Claims

#### A.     Deebs' Discriminatory Discharge Claim

As part of establishing his *prima facie* case, Deebs must demonstrate that he was qualified to perform the requirements of the technician position.  Deebs concedes that the electrical skills test

was a requirement of the position, one which every applicant is required to take and pass, and that he never passed it. Nonetheless, Deebs asserts that the exam was administered in such a way as to provide an unfair advantage to at least one younger, similarly-situated coworker. *See generally Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997) (plaintiff seeking to show disparate treatment must demonstrate that the challenged practice resulted in his being treated less favorably than younger workers that are "similarly situated in all material respects"). *See also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (same).

Specifically, Deebs asserts that Capute told Deebs that he had been permitted to retake the test twice, and that a supervisor supplied him with the answers so that he would eventually pass. Deebs also contends that he heard that another younger employee was permitted to forego retaking the test altogether. Such testimony is pure hearsay, and although Deebs claims to have captured at least one of the relevant conversations on audio tape, he has tellingly failed to submit that evidence in opposing the instant motion.

In order to evade summary judgment, "[a] plaintiff may rely only on admissible evidence." *Tutko*, 1999 U.S. App. LEXIS 28455 at *5. "Summary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only 'unsupported assertions,' 'conjecture or surmise,' or 'conclusory statements' to support an essential element of his case." *Id*. at *4-*5, *quoting Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Deebs' bare allegations, however scandalous, cannot withstand summary judgment where they are unsupported by evidence in admissible form.

Having failed to establish that he was qualified for the technician position by virtue of having passed the electronic skills test – an undisputed prerequisite for maintaining employment as a technician – Deebs has failed to set forth a *prima facie* case of discriminatory discharge. As such, that claim must be dismissed.

### B. Deebs' Retaliation Claims

Retaliation claims are also analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. 792. On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation. Once the plaintiff has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

A plaintiff makes out a *prima facie* case of retaliation by showing: (1) his participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Id.*

Here, Deebs contends that he was discharged from his second, temporary position with ALSTOM in retaliation for filing an EEOC charge of discrimination against the company. With respect to a "causal connection," *Deebs concedes that he is relying solely upon the temporal proximity of the two events*: the seven months between his initial EEOC charge and his termination, and/or the three months that elapsed from the receipt of his Right-to-Sue letter until his termination.

While temporal proximity has been held sufficient to establish circumstances giving rise to an inference of discrimination where the events were very close in time, "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *See Murray v. Visiting Nurse Servs. Of New York*, 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007) (collecting cases).

Even assuming *arguendo* that the shorter, three-month time lapse between Deebs' Right-to-Sue letter and his termination provides sufficient evidence of a causal connection to support a *prima facie* case, Deebs has produced no evidence that anyone in ALSTOM's Human Resources Department, the undisputed "decision maker" with respect to the termination of his temporary position, was ever aware of his EEOC charge or its disposition. *See Philippeaux v. Fashion Inst. of Tech.*, 1996 U.S. App. LEXIS 33507 at *3 (2d Cir. 1996) (plaintiff failed to set forth *prima facie* case of retaliatory expulsion, where there was no showing that the decision-makers were aware of plaintiff's protected activity); *Murray v. Visiting Nurse Services*, 528 F. Supp. 2d 257 (S.D.N.Y. 2007) (collecting and discussing case law and noting that "district courts have consistently held that, with regard to the causation prong of the *prima facie* standard, [a]bsent any evidence to support an inference that [the decisionmakers] knew of [plaintiff's protected activity, plaintiff] cannot rely on circumstantial evidence of knowledge as evidence of causation"). *But see Gordon v. New York Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("general corporate knowledge that the plaintiff has engaged in a protected activity" is sufficient to satisfy the knowledge requirement of the *prima facie* standard); *Campbell*, 2006 U.S. Dist. LEXIS 14958 at *34 (same).

In any event, even if Deebs were able to successfully establish his *prima facie* case by relying on the temporal proximity between his EEOC charge and termination, it is well-settled that temporal proximity alone is insufficient to overcome an employer's legitimate, nondiscriminatory reason for terminating a plaintiff's employment: here, his prior termination for poor performance. *See Simpson v. New York State Dep't of Civil Servs.*, 166 Fed. Appx. 500, 502 (2d Cir. 2006) (even where *prima facie* case can be established through temporal proximity, "without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext"); *Richter v. Monroe County Dep't of Soc. Serv.*, 2005 U.S. Dist. LEXIS 5800 at *43 (W.D.N.Y. 2005) ("[t]emporal proximity alone is insufficient to carry plaintiff's burden of proof beyond the *prima facie* stage, and nothing she has submitted shows that she will be able to persuade a fact-finder that the retaliation played a part in her termination").

Accordingly, Deebs' retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, ALSTOM's motion for summary judgment (Dkt. #28) is granted and the plaintiffs' Amended Complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 29, 2008.